# 24-

# United States Court of Appeals

*for the*

# Second Circuit

In Re MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, AND MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE,

*Petitioners.*

PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 1:20-cv-11047-PGG

## PETITION FOR A WRIT OF MANDAMUS
## (ORAL ARGUMENT REQUESTED)

PAMELA A. MILLER
ANTON METLITSKY
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, New York 10036
(212) 326-2000

MEAGHAN VERGOW
BRIAN D. BOYLE
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300

*Attorneys for Petitioners*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for the undersigned certifies as follows:

Petitioner Morgan Stanley is a publicly held corporation that has no parent corporation. Based on Securities and Exchange Commission Rules regarding beneficial ownership, Mitsubishi UFJ Financial Group, Inc., 7-1 Marunouchi 2-chome, Chiyoda-ku, Tokyo, 100-8330, beneficially owns greater than 10% of Morgan Stanley's outstanding common stock.

Petitioner Morgan Stanley Smith Barney LLC is a limited liability company whose sole member is Morgan Stanley Capital Management, LLC, a limited liability company whose sole member is Morgan Stanley.

Petitioner Morgan Stanley Compensation Management Development and Succession Committee is an unincorporated association and a committee of Morgan Stanley's Board of Directors.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................... iii

INTRODUCTION ................................................................1

ISSUE PRESENTED ................................................................4

BACKGROUND ................................................................5

    A.    The Federal Complaint ................................................5

    B.    Morgan Stanley's Motion To Compel Arbitration ...........................5

    C.    The District Court's Decision ...........................................7

    D.    Morgan Stanley's Motion For Reconsideration ...................................9

    E.    The Parallel Arbitrations ................................................10

    F.    Latest Proceedings Below .............................................11

ARGUMENT ................................................................12

    I.    MORGAN STANLEY'S RIGHT TO ISSUANCE OF THE WRIT IS CLEAR AND INDISPUTABLE........................................13

        A.    The district court's choice to reach the merits usurped the arbitrators' power and rested on clear legal error ..............14

        B.    The irregularities surrounding the decision reinforce its error ................................................................17

    II.    MORGAN STANLEY HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF........................................25

    III.    ISSUANCE OF THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES........................................30

CONCLUSION ................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adams v. Intralinks, Inc.*,
2004 WL 1627313 (S.D.N.Y. July 20, 2004)................................19

*Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*,
274 F.2d 805 (2d Cir. 1960) ...........................................27

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)........................................................14

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015) ...........................................27

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
910 F.2d 1049 (2d Cir. 1990) .........................................26

*Cashman v. GreyOrange, Inc.*,
2023 WL 2652789 (N.D. Ga. Mar. 27, 2023) .............................22

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004)................................................ 13, 25

*Comverse, Inc. v. Am. Telecomms., Inc.*,
2006 WL 3016315 (S.D.N.Y. Oct. 23, 2006)..............................26

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................14

*Ex parte Fahey*,
332 U.S. 258 (1947)........................................................25

*Faris v. S. Ute Indian Tribe*,
2023 WL 7386870 (D. Colo. Nov. 8, 2023)...............................22

*Foster v. Bell Atl. Tricon Leasing Corp.*,
1994 WL 150830 (S.D.N.Y. Apr. 20, 1994) .............................20

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)................................................ 15, 16

*Greenlaw v. United States*,
554 U.S. 237 (2008)........................................................17

*Grimo v. Blue Cross/Blue Shield of Vt.*,
    34 F.3d 148 (2d Cir. 1994) ................................................................20

*Haropulos v. First Am. Title Ins. Co. of N.Y.*,
    1995 WL 274456 (S.D.N.Y. May 10, 1995) ................................23

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) .................................................... 26-27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)................................................................... 14-15

*Hester v. Whatever It Takes*,
    2022 WL 89176 (W.D. Ky. Jan. 7, 2022) ....................................22

*Hudson v. Parker*,
    156 U.S. 277 (1895)....................................................................32

*In re A.H.*,
    999 F.3d 98 (2d Cir. 2021) ................................................. 13, 25

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ......................................................25

*In re IBM Corp.*,
    687 F.2d 591 (2d Cir. 1982) .......................................................32

*In re Roman Catholic Diocese of Albany*,
    745 F.3d 30 (2d Cir. 2014) .......................................... 29, 30, 31

*In re Sharon Steel Corp.*,
    918 F.2d 434 (3d Cir. 1990) ......................................................29

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010) .................................. 13, 25, 30, 31

*Israel v. Voya Institutional Plan Servs., LLC*,
    2017 WL 1026416 (D. Mass. Mar. 16, 2017) .............................23

*Kerr v. U.S. Dist. Ct.*,
    426 U.S. 394 (1976)....................................................................13

*Killian v. McCulloch*,
    850 F. Supp. 1239 (E.D. Pa. 1994)..............................................22

*Linde v. Arab Bank, PLC*,
    706 F.3d 92 (2d Cir. 2013) ...................................... 13, 25, 28, 30

iv

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991)..................................................................15

*McKinsey v. Sentry Ins.*,
    986 F.2d 401 (10th Cir. 1993) .............................................22

*Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*,
    107 F.3d 979 (2d Cir. 1997) .................................................28

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Seneca Fam. of Agencies*,
    255 F. Supp. 3d 480 (S.D.N.Y. 2017) .................................26

*Niagara Hooker Emps. Union v. Occidental Chem. Corp.*,
    935 F.2d 1370 (2d Cir. 1991) ...............................................15

*Oatway v. AIG, Inc.*,
    325 F.3d 184 (3d Cir. 2003) .................................................22

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017) .................................................19

*Pilkington v. CGU Ins. Co.*,
    2000 WL 33159253 (E.D. Pa. Feb. 9, 2002).......................22

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*,
    962 F. Supp. 385 (S.D.N.Y. 1997) ......................................26

*SEC v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010) .................................................13

*Smith v. Rochester Tel. Bus. Mktg. Corp.*,
    786 F. Supp. 293 (W.D.N.Y. 1992).....................................23

*Stein v. KPMG, LLP*,
    486 F.3d 753 (2d Cir. 2007) .................................................30

*Thales Avionics, Inc. v. L3 Techs., Inc.*,
    -- F. Supp. 3d --, 2024 WL 815845 (S.D.N.Y. Feb. 27, 2024) ....................26

*U.S. E. Telecom., Inc. v. U.S. W. Info. Sys., Inc.*,
    15 F.3d 261 (2d Cir. 1994) ...................................................31

*United States v. Rechnitz*,
    75 F.4th 131 (2d Cir. 2023) ............................................ 18-19

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020)........................................................ 17, 18

*United Steelworkers of Am. v. Am. Mfg. Co.*,
    363 U.S. 564 (1960)......................................................................15

*Will v. United States*,
    389 U.S. 90 (1967)............................................................... 13, 31

*Wilson v. Safelite Grp., Inc.*,
    930 F.3d 429 (6th Cir. 2019) ......................................................22

*WTA Tour, Inc. v. Super Slam Ltd.*,
    339 F. Supp. 3d 390 (S.D.N.Y. 2018) .......................................26

## Statutes & Other Authorities:

28 U.S.C. § 1651 .........................................................................12

29 U.S.C. § 1002 .........................................................................19

29 C.F.R. § 2510.3-2 ...................................................................22

Bonus, *Black's Law Dictionary* (11th ed. 2019) ......................23

Bonus, *Webster's Third New International Dictionary of the English
    Language, Unabridged* (1993 ed.) ..............................................23

Mass. Gen. Laws ch. 149, § 148 .................................................23

U.S. Dep't of Lab., Off. Pension & Welfare Benefit Programs, Op. Letter
    No. 98-02A, 1998 WL 103654 (Mar. 6, 1998) ...................... 20, 22

U.S. Dep't of Lab., Off. Pension & Welfare Benefit Programs, Op. Letter
    No. 2002-13A, 2002 WL 31846478 (Dec. 6, 2002).............. 20, 22

## INTRODUCTION

The district court improperly purported to rule on the merits of this putative class action even as it correctly ordered the parties to arbitrate. The decision effectively denies Morgan Stanley the right to have the merits resolved in arbitration as the parties agreed, while wreaking havoc in derivative arbitrations, where the court's ruling in plaintiffs' favor is being cited as dispositive of the merits, leaving nothing but the assessment of damages for the arbitrators. Effectively, Morgan Stanley has been issued what is being proffered as a classwide determination of liability based on plaintiffs' complaint even though there was no basis for the court to reach the merits in an order compelling arbitration. The fact that Morgan Stanley has been severely prejudiced on the merits through an order compelling arbitration—in a proceeding in which it did not so much as file a responsive pleading, much less present its case on an actual evidentiary record— necessitates immediate corrective action. With no movement by the district court on a motion for reconsideration that has been fully briefed for months, even as arbitrations continue to proceed to unreviewable hearings, Morgan Stanley's only recourse now is in this Court.

The underlying dispute here concerns plaintiffs' contention that certain deferred compensation awards issued by Morgan Stanley are a "pension plan" subject to the Employee Retirement Income Security Act of 1974 (ERISA). To

decide that this dispute is arbitrable, the district court did not need to reach the question of whether the awards are *in fact* a "pension plan," which is why neither party presented that question to the court. It was sufficient simply to analyze, as the court separately did, whether plaintiffs would be able to obtain all the relief available to them under ERISA *if* they were to show in arbitration that ERISA's protections apply.

Nevertheless, two years after Morgan Stanley first moved to compel arbitration, the district court reached the core merits question, finding that the awards are governed by ERISA. It did so on the basis of five-page letters that it ordered the parties to submit, two years after the motion to compel was first filed, outlining their underlying positions on the merits. That was error. The Federal Arbitration Act (FAA) requires courts to *enforce* arbitration agreements, yet the district court, with no need or authority to do so, intruded on the very decision reserved to arbitration. The absurd consequence of its error has been that the issue at the heart of this case has purportedly been decided on a motion to compel arbitration—with no answer, no discovery, no record, no testimony, no hearing— in place of the arbitrators actually vested with the power and equipped with the evidence to decide these claims.

Claimants are now leveraging the district court's order in parallel arbitrations, asserting that arbitrators have no choice but to follow the decision as

controlling authority. The decision has prompted a rash of new arbitrations against Morgan Stanley and even a new lawsuit against a competing financial services firm, as lawyers use the decision on the motion to compel arbitration to solicit new claimants. Claimants' counsel prevailed in an arbitration for the first time by putting on a case that consisted *exclusively* of the argument that the district court's order bound the panel, requiring entry of an award against Morgan Stanley. So long as the district court's improper "merits ruling" on the motion to compel arbitration remains outstanding, Morgan Stanley faces round after round of arbitrations where it is contended the arbitrators have little or nothing left to decide. Morgan Stanley will have no ability to vacate adverse arbitral awards in which arbitrators felt bound to follow the court, even if the district court's error is thereafter corrected.

The district court has neglected to act on Morgan Stanley's timely motion for reconsideration, placing Morgan Stanley in an untenable limbo, with no way to appeal the district court's decision or to prevent that decision from being used in arbitrations that are now being heard on a rolling basis around the country. All three requirements for issuance of a writ of mandamus are thus easily satisfied. *First*, Morgan Stanley has a clear and indisputable right to relief, since it is obvious that the district court can neither resolve the merits of a dispute that the parties agreed to arbitrate, nor unreasonably tie up the case in a manner that precludes

3

appeal. *Second*, Morgan Stanley has no other adequate means to obtain relief from the ongoing irreparable harm it is suffering. *Third*, the writ is appropriate under these circumstances. The court's errors—in deciding to intrude deeply on the merits, and then resolving the merits against Morgan Stanley without any factual development at all—are flagrant. The decision resulted from a faulty process, and the harm it is causing is imminent and irreparable. The court's inaction on Morgan Stanley's latest motion has only topped off its already-unacceptable, years-long failure to speedily dispose of the motion to compel arbitration.

Morgan Stanley thus respectfully requests that the Court grant the writ of mandamus and either (i) direct the district court to grant the motion to compel arbitration without purporting to decide or otherwise commenting on whether ERISA governs the deferred compensation awards at issue, or (ii) at the very least, direct the district court to rule on the motion for reconsideration so that Morgan Stanley can take an ordinary-course appeal if necessary.

## ISSUE PRESENTED

Whether a writ of mandamus should issue to direct the district court (1) to compel arbitration without purporting to determine whether ERISA governs the awards at issue, or (2) in the alternative, to rule promptly on the pending motion for reconsideration so that Morgan Stanley can appeal in the ordinary course.

4

## BACKGROUND

### A. The Federal Complaint

Plaintiffs filed this action in federal court on December 30, 2020. ADD-548. Plaintiffs' operative complaint asserts three ERISA claims against Morgan Stanley, all based on plaintiffs' contention that Morgan Stanley's deferred incentive compensation awards to them are in fact an "employee pension benefit plan" under ERISA. ADD-54-58 ¶¶ 98-117. The unvested awards were cancelled in accordance with the award terms when plaintiffs left Morgan Stanley's employment, but plaintiffs claim that they are entitled to payment of the unvested deferred compensation as an ERISA-protected pension benefit. ADD-33 ¶ 6. The ultimate question in the matter is whether the awards are subject to ERISA.

### B. Morgan Stanley's Motion To Compel Arbitration

Morgan Stanley first moved to compel arbitration on March 24, 2021. ADD-1. Plaintiffs filed an amended complaint joining new plaintiffs on March 24, 2022, ADD-31, and Morgan Stanley renewed its motion to compel arbitration on May 9, 2022, ADD-62. In Morgan Stanley's briefing supporting its operative motion to compel, Morgan Stanley argued that plaintiffs had entered valid, governing arbitration agreements. ADD-76-83. Moreover, while plaintiffs technically claimed to be "asserting representative ERISA claims that are not subject to arbitration," in substance plaintiffs sought "to recover benefits … *from*

5

the alleged plan."  ADD-81-83.  The arbitrability of individual ERISA benefits

claims is well-settled, and plaintiffs were bound to arbitrate those benefits claims

regardless whether they also asserted representative claims.  ADD-81-83; ADD-

228; ADD-231-32.

Plaintiffs opposed arbitration on the ground that "[t]he parties did not agree

to arbitrate claims brought in Plaintiffs' representative capacity," ADD-249, and

that any agreement to arbitrate their claims under ERISA §§ 502(a)(2) and

502(a)(3) would be "unenforceable as a 'prospective waiver[s] of a party's right to

pursue statutory remedies' under ERISA § 502," ADD-255.  Plaintiffs did not

dispute that their ERISA benefit claims could be compelled to arbitration.  *See*

ADD-257.

Neither plaintiffs nor Morgan Stanley asked the district court to resolve

whether the awards were in fact an ERISA-governed "pension plan" (the ultimate

merits issue).  They simply contested whether plaintiffs asserted *claims* that could

not be arbitrated consistent with ERISA and the parties' agreements.

On Friday, September 15, 2023—more than a year after the parties finished

briefing Morgan Stanley's renewed motion and nearly three years after the filing of

the original complaint—the district court issued an order directing the parties to

submit, in five days, "letters addressing whether Plaintiffs' allegations that, in

certain scenarios, some financial analysts receive their scheduled payouts after

6

their employment with Morgan Stanley ends demonstrates that the deferred compensation program is an ERISA plan." ADD-344. The district court further instructed the parties to address five specific cases never previously cited by either party. ADD-344-45. That afternoon, plaintiffs filed exhibits "[p]ursuant to the request received from [the court]'s Chambers," "to provide the Court with [certain] documents cited in their Amended Complaint." ADD-346. Morgan Stanley had not even been notified of this "request," nor did the district court invite Morgan Stanley to submit any documents of its own.

Each party filed a five-page letter in response to the court's order, consistent with the district court's individual rules.[1] Morgan Stanley's letter responded to the court's question as ordered, but also reiterated that this ultimate merits question must be decided in arbitration. ADD-526-30.

## C. The District Court's Decision

On November 21, 2023, the district court issued a memorandum opinion and order granting Morgan Stanley's motion to compel arbitration. ADD-538-93. The court explained that the parties entered valid arbitration agreements with paradigmatically broad language. ADD-552-64.

---

[1] Judge Gardephe's Individual Rule I.A, https://tinyurl.com/y3bw46b3 ("Letters may not exceed 5 pages in length.").

7

The court then proceeded to opine at length on the ultimate merits of the case—i.e., whether the awards do in fact qualify as a pension plan under ERISA—and concluded that they do. The court's analysis of that question was riddled with factual and legal errors, but most important for present purposes is that the court erred in reaching the question at all—as no party had asked it to do so, the case was still at the pleadings stage without any developed record, and, of course, the whole question before the court was whether this very merits issue should be resolved in arbitration.

Remarkably, after the court gratuitously concluded that the awards are indeed governed by ERISA—i.e., seemingly finding for plaintiffs on the merits of a purported class action complaint that wasn't ripe for adjudication before it or, for that matter, in any forum—it then turned to the arbitrability question actually presented and concluded that plaintiffs' claims are subject to arbitration. The court agreed with Morgan Stanley that plaintiffs raise individual benefits claims that are indisputably arbitrable, ADD-578-88; that plaintiffs failed to show that their § 502(a)(3) claims are not arbitrable as well, ADD-588-90; and that compelling arbitration would not result in an impermissible prospective waiver of any statutory rights, ADD-590-92. The court's unnecessary ERISA conclusion did not bear on any aspect of that reasoning—after all, the court concluded arbitration was proper

*even assuming* ERISA applied.  Proving the point, in reaching that conclusion, the court never once referred back to its ERISA discussion.

Within 24 hours of the court's decision, plaintiffs' counsel characterized it as conclusively resolving the merits of the dispute, effectively leaving to arbitration only the question of damages, and other lawyers began using the decision to solicit prospective clients to commence additional arbitrations on copycat claims.  ADD-602.  Plaintiffs' counsel here have since launched a website, www.morganstanleycompensation.com, similarly advertising their services, and representing that they "obtained a ruling from a federal court in NY concluding that the Morgan Stanley deferred compensation plan is governed by" ERISA.[2]

### D. Morgan Stanley's Motion For Reconsideration

Morgan Stanley promptly sought reconsideration, requesting that the court withdraw its conclusion on the merits from its decision compelling arbitration.  ADD-594-95.  Morgan Stanley argued that the court clearly erred in purporting to decide the ERISA question because it was unnecessary to the court's conclusion and thus outside the lawful scope of the court's review under the FAA—and also improper under the party-presentation principle, because the parties had not asked the court to decide whether ERISA in fact applied.  ADD-610-16.  Morgan Stanley further contended that the court clearly erred in resolving the parties' dispute in

---

[2] https://perma.cc/8CMW-QPH4.

favor of ERISA coverage without a developed factual record—which no other court has ever done, even when actually presented with the issue—and also in deciding that complex and consequential question without plenary briefing. ADD-616-20. Last, Morgan Stanley highlighted some of the most glaring substantive errors in the court's analysis, ADD-621-26, to illustrate why the court should not have reached out to decide the question based on the complaint and the documents it incorporated. Plaintiffs' response to the reconsideration motion did not assert that the court's ERISA discussion was material to its ultimate decision on the motion. Morgan Stanley's motion for reconsideration has been fully briefed and submitted since January 30, 2024.

### E. The Parallel Arbitrations

After Morgan Stanley moved to compel arbitration of this action, numerous claimants initiated FINRA arbitrations patterned on plaintiffs' complaint and citing the court's ruling as effectively dispositive. The first such statement of claim was filed on September 2, 2021, but the filings have accelerated since the district court treaded on the merits of the dispute; there are now 40 pending arbitrations, with 145 claimants, and counting. The statements of claim in these arbitrations generally closely track the federal complaint; many paragraphs are copied and pasted verbatim, except now they have one new element: they attach the court's "merits ruling" so they can contend the central question has already been decided.

10

Morgan Stanley prevailed in the two arbitrations asserting this claim that concluded before the district court's decision. But in the first arbitration to proceed to hearing in the decision's wake, claimants' counsel reduced their case to the argument that the *Shafer* decision had already decided that ERISA applies to these awards, requiring the arbitrators to rule against Morgan Stanley. ADD-671-72. For example, counsel argued that:

- "[T]he [*Shafer*] opinion by Judge Gardephe is the law, Federal District Court opinion, and it holds in no uncertain terms that Morgan Stanley's plans are governed by the broad law ERISA … . So what we're going to be asking of you this week respectfully is … to just apply the law and find in favor of plaintiffs." ADD-703-04 at 23:9-24:1.

- "[T]he panel's duty is to apply the law, and *Shafer* is the law. … Morgan Stanley is asking you to disregard the law and … it is not within the province of a panel in arbitration to overrule a federal court decision." ADD-803 at 44:9-15.

While FINRA arbitrators are not required to explain their rulings, following this submission the FINRA panel found in the claimants' favor and awarded them more than $3 million. ADD-813-20.

On February 29, plaintiffs in this case filed their first arbitral statement of claim against Morgan Stanley. Plaintiffs have since filed two more.

## F. Latest Proceedings Below

Morgan Stanley, seeking to apprise the court of how the prejudice its ERISA dictum threatened had in fact materialized and soon would again, on April 2 filed a

motion for leave to submit a declaration and exhibits in support of the motion for reconsideration. ADD-670-74. The motion for leave stressed the urgent need for the court's resolution of the motion for reconsideration to prevent the same prejudice from recurring in serial arbitrations scheduled to begin imminently. ADD-673-74. The court has not acted on the motion for leave.

On Friday, April 26, pursuant to the district judge's individual rule IV.H, Morgan Stanley filed a letter notifying the court that its motion for reconsideration will have been fully briefed and submitted for 90 days as of Monday, April 29, the same day that the next parallel arbitration was scheduled to begin. ADD-826.[3] In the next arbitration hearing, the claimants again argued that the district court's order governed the arbitrators' decision of the ERISA issue.

To date, the court has taken no action on Morgan Stanley's reconsideration motion, and its decision purporting to resolve the merits of the dispute while at the same time compelling arbitration remains outstanding.

## ARGUMENT

The All Writs Act vests federal courts with authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The writ of mandamus "has

---

[3] That particular arbitration was thereafter postponed due to the withdrawal of one of the selected arbitrators, but another proceeded to hearing on May 13.

12

traditionally been used" to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). This Court issues a writ of mandamus when (1) the petitioner's "right to issuance of the writ is clear and indisputable"; (2) the petitioner has "no other adequate means to attain the relief he desires"; and (3) the Court is "satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004) (quotations omitted); *accord In re A.H.*, 999 F.3d 98, 105 (2d Cir. 2021). Those preconditions are satisfied here.

## I.    MORGAN STANLEY'S RIGHT TO ISSUANCE OF THE WRIT IS CLEAR AND INDISPUTABLE

A petitioner's right to issuance of the writ is "'clear and indisputable' … in 'exceptional circumstances amounting to a judicial usurpation of power *or* a clear abuse of discretion.'" *In re The City of New York*, 607 F.3d 923, 943 (2d Cir. 2010) (quoting *Cheney*, 542 U.S. at 380). The district court here both usurped the arbitrators' power *and* clearly abused its discretion. This Court finds an abuse of discretion when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if it has rendered a decision that cannot be located within the range of permissible decisions." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 107 (2d Cir. 2013) (quoting *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010)). The district court's gratuitous choice to reach

13

the merits of plaintiffs' claims usurped power the FAA reserves to arbitrators and, worse, rested on a clearly erroneous view of the law and the facts that included adverse inferences against Morgan Stanley based on (ironically) the absence of a record. The procedural irregularities leading to the district court's decision—in particular, the court's unprecedented choice to resolve the dispute in favor of ERISA coverage without holding any hearing, accepting any responsive pleading, or providing any opportunity for Morgan Stanley to submit evidence—only reinforce the need for appellate intervention.

### A. The district court's choice to reach the merits usurped the arbitrators' power and rested on clear legal error

The district court's first obvious and fundamental error was to address the merits of plaintiffs' claims in a decision that sent the merits to arbitration. The FAA limits courts to deciding only whether the parties have entered an agreement that lawfully requires arbitration of their dispute. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("the Act … mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). The most important limit to the narrow judicial role is that when "deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *accord, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*,

14

586 U.S. 63, 68 (2019) (same); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("The courts, therefore, have no business weighing the merits of the grievance" to be arbitrated).

"When the judiciary undertakes to determine the merits" of a dispute reserved for arbitration, "it usurps a function which under that regime is entrusted to the arbitration tribunal." *United Steelworkers*, 363 U.S. at 569; *see also Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1380 (2d Cir. 1991) ("The Union's request for an injunction … would require the court to [render] a decision [that] would clearly usurp the arbitrator's function, impeding, rather than assisting, the agreed-upon dispute resolution process."). A court may address a merits issue only if and to the extent strictly necessary to decide whether the dispute must be referred to arbitration—in other words, only if the court is "required to decide" the merits issue "in order to determine whether the parties consented to arbitrate the matters" in the first place. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 304 (2010); *accord Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991).

Plaintiffs have admitted, as they must, that the district court's ERISA coverage ruling goes to the heart of their claims' merits. *See* ADD-642. The FAA and decades of precedent thus required the district court to refrain from deciding

15

whether ERISA in fact applies unless doing so was strictly necessary to decide whether plaintiffs were bound to arbitrate their claims.

Reaching the question whether ERISA governed the awards here was manifestly unnecessary to the district court's arbitrability determination.  As explained above, the district court did not so much as mention its ERISA merits analysis in concluding that plaintiffs' claims were arbitrable.  The entire ERISA discussion could be excised from the order, and the court's conclusion and the reasoning behind it would be exactly the same.  The district court held— correctly—that ERISA does not stand in the way of arbitration here even if it applies because plaintiffs did not assert genuinely representative claims but rather sought to compel payment of ordinary benefits *from* the purported plan.  ADD-585.  That is just another way of saying that it does not matter whether ERISA governs the awards, meaning the district court was not "required to decide" that question "in order to determine whether the parties consented to arbitrate the matters."  *Granite Rock Co.*, 561 U.S. at 304.

Having concluded that the parties agreed to arbitrate this dispute, the district court far exceeded its authority when it unnecessarily reached the merits question of whether ERISA covers the awards here.  Because the FAA clearly reserves the merits to the arbitrator, consistent with the parties' agreements, the district court's

16

unnecessary foray into the merits amounts to a judicial usurpation of power reserved for the arbitrator.

### B. The irregularities surrounding the decision reinforce its error

The unusual procedural aspects of the district court's determination of Morgan Stanley's motion to compel arbitration further support mandamus relief.

***No party presentation.*** The district court's resolution of the merits was especially egregious because neither party asked the court to decide them. The Supreme Court has repeatedly explained: "In our adversary system, … we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). That party-presentation principle requires courts to act as "essentially passive instruments of government" that "normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (quotation omitted). The parties—mindful of the limited scope of judicial review here—asked the Court to decide whether plaintiffs' claims are arbitrable regardless whether the program is an ERISA plan. *See supra* at 5-6. For two and a half years of litigation and twelve filings over Morgan Stanley's original and renewed motions to compel arbitration, the parties never sought the district court's take on the ERISA coverage

17

question.  Neither side wanted the district court to "big foot" a later arbitration by making pronouncements on the merits of plaintiffs' claims—either way.

Instead, it was the district court that raised the merits question *sua sponte* in its September 15 order—and even directed the parties on how to answer it, instructing them to address specific cases not previously cited by the parties.  *See supra* at 6-7.  In doing so, the court violated the "general rule" that "parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief," and instead acted as a freewheeling inquisitor "sally[ing] forth … looking for wrongs to right." *Sineneng-Smith*, 590 U.S. at 375-76 (quotations and alteration omitted).  Morgan Stanley dutifully complied with the district court's order in its letter response, but it reiterated that complete relief was available on plaintiffs' claims in the agreed-upon arbitrations, and that the merits therefore *had to be* decided by the arbitrators. ADD-526-30.

**Faulty process.**  The district court's process here was likewise highly irregular.  To begin, the district court apparently privately solicited documents from plaintiffs without notifying Morgan Stanley.  *See* ADD-346 (describing "the request received from Your Honor's Chambers," never communicated to Morgan Stanley).  "*[E]x parte* communications are the exception rather than the rule, and they require particular justification."  *United States v. Rechnitz*, 75 F.4th 131, 147

18

(2d Cir. 2023) (collecting cases). Indeed, the district court's request here was "doubly ill-advised because it was both *ex parte and* off the record, magnifying the concerns inherent to both types of communications," especially because "[a] public docket entry requiring an update from the parties would have been equally effective." *Id.* On top of all that, the district court asked plaintiffs alone to submit the documents attached to their complaint without giving Morgan Stanley any comparable opportunity. The upshot is that the district court purported to resolve the ultimate merits on a record that simply took plaintiffs' complaint as true (the court quoted long passages from the complaint as though they were established fact, *see* ADD-572-73), without receiving any evidence or even a responsive pleading from Morgan Stanley.

The district court also inexplicably decided that the awards are subject to ERISA based on an "effects-based inquiry," without any factual record to actually gauge the "results" or "effects." ADD-572 (quoting *Pasternack v. Shrader*, 863 F.3d 162, 170 n.5 (2d Cir. 2017)).[4] A court can conclude that a complaint does not plausibly allege ERISA pension plan coverage. *See, e.g.*, *Pasternack*, 863 F.3d at 168 (affirming dismissal on that ground).[5] But where, as here, the plaintiffs'

---

[4] Plaintiffs have never disputed the awards do not satisfy ERISA's first definition of a pension plan because they are not intended to "provide[] retirement income to employees." 29 U.S.C. § 1002(2)(A)(i).

[5] *See also, e.g.*, *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004) (finding an exempt bonus plan based on plan terms);

19

theory is that a program has been operated as an ERISA pension plan despite terms declaring the contrary, evidence must be considered—after it has been discovered and presented. *No court* has ever found a pension plan based on "results" without any factual record to allow it to actually evaluate the results. Indeed, after a district court found an ERISA plan based on a "sparse factual record"—albeit more than the bare complaint and incorporated materials here—this Court vacated and remanded for the district court to revisit that question based on a "more complete factual record." *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 152-53 (2d Cir. 1994).

One of the most compelling factual considerations in deciding whether deferred awards represent a disguised pension, according to the Department of Labor (DOL), is the proportion of distributions that are made to retirees and others whose employment has ended relative to current employees. *See, e.g.*, U.S. Dep't of Lab., Off. Pension & Welfare Benefit Programs, Op. Letter No. 2002-13A, 2002 WL 31846478, at *3 & n.3 (Dec. 6, 2002); U.S. Dep't of Lab., Off. Pension & Welfare Benefit Programs, Op. Letter No. 98-02A, 1998 WL 103654, at *2 (Mar. 6, 1998). In the arbitrations that have proceeded to hearing, Morgan Stanley has submitted unchallenged data showing that the vast majority of deferred award

---

*Foster v. Bell Atl. Tricon Leasing Corp.*, 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994) (finding no ERISA plan based on "the terms of the plan" and "plaintiff's characterization" of its functioning).

distributions were made to current employees. ADD-737 at 224:4-12. The district court had no such information—or any other information regarding the administration or operation of the deferred awards—when it wrongly took up the merits of the ERISA coverage question. Incredibly, the district court expressly noted the absence of any record on that crucial question, and then simply assumed the facts against Morgan Stanley when deciding to rule anyway. ADD-576 ("[N]othing in the record suggests that post-employment deferred compensation payments are rare.").

The merits of this case require consideration of the ERISA statute, its implementing regulations, and a robust body of caselaw, not to mention a fully developed record that includes the complete award documentation, the financial regulatory reasons for these awards, and the awards' purposes and their operation in practice. The district court's decision of the issue based on plaintiffs' pleading and five-page letters, with no argument or hearing, would have been improper even if the court had had the authority to reach it at all.

***Clear substantive errors.*** The district court's obvious legal errors in analyzing the merits—applying irrelevant law to misunderstood facts—make it even clearer that the court erred in reaching the merits at all.

The district court's disregard for the DOL's bonus regulation illustrates the point. That regulation exempts from ERISA's definition of a "pension plan"

21

"payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c). Applying that regulation, an unbroken line of cases holds that compensation paid after a deferral period as a reward for retention qualifies as a "bonus" under the regulation. *See, e.g. Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435-36 (6th Cir. 2019) ("Generally, a bonus plan's terms state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention."); *Oatway v. AIG, Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (applying regulation to "plan designed to provide a financial incentive for employees to remain with AIG and improve their performance there"); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) (applying regulation to payments made over seven-year vesting schedule for "purpose of promoting … loyalty to the organization").[6] That is how the deferred compensation at issue here works: it is paid as a retention bonus if

---

[6] *See also, e.g.*, *Faris v. S. Ute Indian Tribe*, 2023 WL 7386870, at *5-6 (D. Colo. Nov. 8, 2023); *Cashman v. GreyOrange, Inc.*, 2023 WL 2652789, at *5-6 (N.D. Ga. Mar. 27, 2023); *Hester v. Whatever It Takes*, 2022 WL 89176, at *6 (W.D. Ky. Jan. 7, 2022); *Pilkington v. CGU Ins. Co.*, 2000 WL 33159253, at *3 (E.D. Pa. Feb. 9, 2002); *Killian v. McCulloch*, 850 F. Supp. 1239 (E.D. Pa. 1994); U.S. Dep't of Lab., Op. Letter No. 2002-13A, 2002 WL 31846478, at *1-3; U.S. Dep't of Lab., Op. Letter No. 98-02A, 1998 WL 103654, at *1-2.

employees remain employed after a vesting period.  *See* ADD-527-28; ADD-622-24.

To conclude that the deferred compensation awards at issue are not bonuses, the district court didn't apply any of the cases or the DOL advisory opinions involving the bonus regulation.  *See* ADD-573-74.  Instead, the court consulted two dictionaries and irrelevant cases.[7]  And the dictionaries only show why Morgan Stanley's awards *do* qualify as bonuses.  The court's quoted excerpts define a bonus as a "premium paid in addition to what is due or expected" or "money or an equivalent given in addition to the usual compensation."  *Id.* (first quoting *Bonus*, *Black's Law Dictionary* (11th ed. 2019); and then quoting *Bonus*, *Webster's Third New International Dictionary of the English Language, Unabridged* (1993 ed.)).  Financial advisors' guaranteed compensation is what is "due or expected" and financial advisors' "usual compensation" in a given year;

---

[7] Two didn't even involve ERISA.  *See Haropulos v. First Am. Title Ins. Co. of N.Y.*, 1995 WL 274456, at *1 (S.D.N.Y. May 10, 1995) (Age Discrimination in Employment Act case noting background fact, unrelated to legal analysis, that plaintiff's "salary was $50,000 per year plus incentive commissions and bonuses"); *Israel v. Voya Institutional Plan Servs., LLC*, 2017 WL 1026416, at *4-7 (D. Mass. Mar. 16, 2017) (distinguishing bonuses from commissions within meaning of Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, which expressly refers to and reaches "commissions" but does not mention or reach bonuses).  The third involved ERISA, but not the bonus regulation; it construed and applied the terms of the particular plan at issue there.  *Smith v. Rochester Tel. Bus. Mktg. Corp.*, 786 F. Supp. 293, 298 (W.D.N.Y. 1992).

deferred incentive compensation that specifically rewards longevity with the company is "paid" or "given in addition" to that.

The district court also misunderstood the terms of the awards. The court presupposed that advisors have a right to the deferred compensation when the awards are issued, before they vest. *See* ADD-576 ("Whenever an action (here, leaving Morgan Stanley's employ) results in the forfeiture of a contractual right, those facts can always be recharacterized by stating that the opposite action (here, remaining in Morgan Stanley's employ) is a condition precedent to the performance of the contract."). But the awards by their clear and ambiguous terms provide just the opposite: The governing documents explicitly state that financial advisors do not acquire *any* right to payment on an award *until they satisfy the conditions for payment*. *See, e.g.*, ADD-428 ("[Y]ou will earn your 2017 award only if you (1) remain in continuous Employment through the Scheduled Vesting Date (subject to limited exceptions set forth below), (2) do not engage in any Prohibited Activity …"); ADD-357 ("Deferred compensation awards are contingent upon the Advisor remaining employed through the grant and vesting date of the award."). When an advisor leaves before vesting, they fail to meet the conditions for payment of the award (continued employment on the vesting date).

***Indefensible inaction.*** Morgan Stanley's motion for reconsideration notified the district court of its severe legal error and the grave deficiencies in its

24

process and apprised the court of its urgent need for a decision, yet the district court has neither supplied any relief nor rejected Morgan Stanley's contentions. The court has simply done nothing. "Rather than prevent any further perpetration of injury" caused by its egregiously wrong decision, the district court's inaction has "ensured that [Morgan Stanley] would remain injured" by the court's readily fixable mistakes, even as that irreparable harm recurs. *A.H.*, 999 F.3d at 107-08 (quotation omitted).

## II. MORGAN STANLEY HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF

A mandamus petitioner must have "'no other adequate means to attain the relief he desires'—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380-81 (citation omitted) (quoting *Ex parte Fahey*, 332 U.S. 258, 260 (1947)). To that end, this Court "ha[s] examined whether issuing the writ would prevent an otherwise 'irreparable harm.'" *Linde*, 706 F.3d at 107 (quoting *City of New York*, 607 F.3d at 929); *see A.H.*, 999 F.3d at 106 ("When a petitioner faces significant 'irreversible, non-monetary harm' if forced to wait for an appeal to run its course, mandamus may issue to prevent that harm.'" (quoting *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 353 (5th Cir. 2017))). "[T]he type of harm that is deemed irreparable for mandamus purposes typically involves an interest that is both important to and distinct from the resolution of the merits of the case." *Linde*, 706 F.3d at 117.

25

***Irreparable harm.*** Morgan Stanley faces ongoing irreparable harm from the trial court's ultra vires foray into the merits of this case. In repeatedly reaffirming the "rule permitting a district court to preserve the meaningfulness of [an] arbitration through a preliminary injunction," this Court has recognized the irreparable harm that results when parties to an arbitration agreement do not "get what they bargained for—a meaningful arbitration of the dispute." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990); *see also, e.g., Thales Avionics, Inc. v. L3 Techs., Inc.*, -- F. Supp. 3d --, 2024 WL 815845, at *7 (S.D.N.Y. Feb. 27, 2024) ("[T]he loss of the right to have a dispute decided by arbitration when arbitration is the agreed upon means of resolution is itself an irreparable injury."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017) (similar); *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 406 (S.D.N.Y. 2018) (similar); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) ("Reliance will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with Seismic."). "The deprivation of the right to arbitration is of particular weight in light of the 'strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Comverse, Inc. v. Am. Telecomms., Inc.*, 2006 WL 3016315, at *5 (S.D.N.Y. Oct. 23, 2006) (quoting *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,

26

246 F.3d 219, 226 (2d Cir. 2001)). And a district court's resolution of the merits of a dispute reserved for arbitration denies a party its right to arbitration as much as—if not more than—an outright denial of that right. *See, e.g.*, *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 901 (2d Cir. 2015) ("If a court determines the merits of the parties' arguments in advance of a pending arbitration, 'the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated.'" (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960))). Plaintiffs in this case have already filed three arbitral statements of claim against Morgan Stanley pursuant to the court's order—Morgan Stanley has already filed its first answers. Those arbitrations will continue to move forward and may well conclude before the district court rules on Morgan Stanley's motion for reconsideration.

The irreparable harm here, moreover, is substantially more significant than in the ordinary case improperly denying arbitration. That is because there are now numerous arbitrations pending around the country raising materially identical claims. Before the district court's decision purporting to grant Morgan Stanley's motion to compel, Morgan Stanley uniformly prevailed in those arbitrations (because plaintiffs' and other claimants' position on the merits is incorrect both factually and legally). But now, Morgan Stanley is being forced to defend each of these arbitrations against the claim that this federal district court decision already

27

resolved whether the awards are governed by ERISA. Just as a party "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable," Morgan Stanley is being irreparably harmed by arbitrations proceeding under the distorting lens of the district court's impermissible commentary on the merits of plaintiffs' claims. *Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997). And Morgan Stanley's interest in arbitrating plaintiffs' claims—and the many copycat claims that followed plaintiffs' purported class action—free from the distorting influence of a federal court's unnecessary determination of their merits is "an interest that is both important to and distinct from the resolution of the merits of the [federal] case." *Linde*, 706 F.3d at 117.

*No other adequate means.* A writ of mandamus is the only adequate means for Morgan Stanley to prevent the impending irreparable harm. In the ordinary course, the proper avenue for redressing the harm stemming from the district court's decision would be appeal. But appeal is not an adequate means for redressing that harm here, for two reasons.

First, there is no current option for Morgan Stanley to appeal, because the district court has declined to rule on Morgan Stanley's motion for reconsideration. *See supra* at 10-12. The motion for reconsideration has now been fully briefed and submitted for 115 days. In light of the *years* the district court took to decide

28

Morgan Stanley's original motion, there is no reason to believe that a decision on its motion for reconsideration is readily forthcoming. The district court's failure to rule on the motion for reconsideration precludes Morgan Stanley from appealing, and itself warrants mandamus. *In re Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir. 1990) ("By refusing to rule on ARCO's motion to reconsider, the district court in the present case has failed to exercise its judicial power, which in turn has inhibited this Court's exercise of appellate jurisdiction.").

Second, arbitrators (whose decisions under FINRA rules need not be explained and are essentially unreviewable) may continue to view the district court's merits discussion as controlling, as claimants' counsel have insisted, unless and until this Court reverses. As more arbitrations rapidly approach in seriatim, "time matters"; Morgan Stanley has "no other adequate means to attain relief" before other claimants tell other arbitrators the district court has left them with nothing to decide. *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 36 (2d Cir. 2014); *cf. also id.* ("The cat is still in the bag, and the ensuing litigation will inevitably let it out.").

It is not only the lack of any practical means of appealing the district court's decision but also the arbitration context that makes mandamus relief especially appropriate. This Court has held that a post-judgment appeal is an "especially" inadequate means of relief where the petitioner "may have a contractual right to

29

resolve these questions through arbitration and avoid such a proceeding altogether." *Stein v. KPMG, LLP*, 486 F.3d 753, 762 (2d Cir. 2007). Here, in the same order in which the district court affirmed Morgan Stanley's right to arbitrate, it effectively took the right away by resolving the merits—for this case and, as a practical matter, for the numerous arbitrations that will occur in the next few months. A writ of mandamus is the only available means to ameliorate that harm.

## III.  ISSUANCE OF THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

Determining whether issuance of the writ is appropriate under the circumstances "will hinge on different factors in different cases." *Linde*, 706 F.3d at 108. An "extraordinary combination" of factors here "renders this case ripe for mandamus relief." *Diocese of Albany*, 745 F.3d at 37.

***Flagrant error.***  Mandamus is appropriate when the district court's "determination is patently erroneous." *Id.*; *see also City of New York*, 607 F.3d at 939 ("The Supreme Court has also recognized … the ability of mandamus to 'serve as [a] useful safety valve[] for promptly correcting serious errors.'" (quotation omitted; alterations in original)). A court's duty to avoid the merits when deciding a motion to compel arbitration is firmly settled, and there is not one facially plausible reason the court needed to reach the merits here. *See supra* at 14-17. Beyond the court's manifest error in reaching the merits, the court's decision to declare the deferred compensation awards ERISA pension plans without an

30

appropriate record was plain error as well. The writ of mandamus is appropriate when, as here, "a district court ruling flagrantly misapplies a well-settled principle of law." *City of New York*, 607 F.3d at 940 n.17.

**Imminent harms.** Mandamus is also appropriate to address "particularly serious harms preventable only through issuance of [the] writ." *Diocese of Albany*, 745 F.3d at 37. The district court's decision has already prejudiced Morgan Stanley in other arbitrations, and the court's ERISA discussion threatens to deprive Morgan Stanley of its right to arbitrate the disputes with the named plaintiffs here. *See supra* at 14-17, 26-28.

**Faulty process.** Morgan Stanley should not be saddled with the district court's improper foray into the merits under any circumstances, and especially not when that foray resulted from a highly irregular adjudicatory process. *See supra* at 17-21. The writ of mandamus has traditionally served "to confine the lower court to the sphere of its discretionary power." *Will*, 389 U.S. at 104. With respect, the district court has abused its discretion at every juncture.

**Unjustifiable delays.** "[T]he right of a movant to have a motion decided is so clear that it will be enforced under proper circumstances by mandamus." *U.S. E. Telecom., Inc. v. U.S. W. Info. Sys., Inc.*, 15 F.3d 261, 263 (2d Cir. 1994). Issuance of the writ is appropriate when a district court takes "a substantial amount of time to resolve … a clear-cut issue," especially when the court "has been

presented repeatedly with several factors which emphasize the importance of a prompt disposition of th[e] matter." *In re IBM Corp.*, 687 F.2d 591, 603 (2d Cir. 1982).

Morgan Stanley has repeatedly apprised the district court of the urgent need for action; if the court requires more time to consider Morgan Stanley's motion for reconsideration, partially withdrawing its opinion pending decision on that motion would prevent the irreparable harm Morgan Stanley faces without causing harm to anyone else. The district court has not even granted (or denied) even that modicum of relief, even though the *prevailing party* has explained why the opinion imminently threatens irreparable harm. *Cf. id.* (issuing writ where parties faced significant recurring expenses "pursuant to pretrial orders which [district court] refuse[d] to vacate pending [its] decision").

The Supreme Court recognized long ago that when a district judge "declines to exercise his discretion, or to act at all, when it is his duty to do so, a writ of mandamus may be issued to compel him to act." *Hudson v. Parker*, 156 U.S. 277, 288 (1895). The district court's usurpation of the arbitrators' authority and subsequent refusal to do anything about it renders issuance of the writ especially appropriate here.

## CONCLUSION

For the foregoing reasons, Morgan Stanley respectfully requests that the Court issue a writ of mandamus and (i) direct the district court to grant the motion to compel arbitration without any commentary concerning whether ERISA governs, or (ii) at the very least direct the district court to rule on the motion for reconsideration, one way or the other, so that Morgan Stanley can commence an appeal.

Respectfully submitted,

*/s/ Meaghan VerGow*

| | |
|---|---|
| PAMELA A. MILLER | MEAGHAN VERGOW |
| ANTON METLITSKY | BRIAN D. BOYLE |
| O'MELVENY & MYERS LLP | O'MELVENY & MYERS LLP |
| Times Square Tower | 1625 Eye Street, N.W. |
| 7 Times Square | Washington, D.C. 20006 |
| New York, NY 10036 | Tel: (202) 383-5300 |
| Tel: (212) 326-2000 | Fax: (202) 383-5414 |
| Fax: (212) 326-2061 | mvergow@omm.com |
| pmiller@omm.com | bboyle@omm.com |
| ametlitsky@omm.com | |

*Attorneys for Petitioner-Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, and Morgan Stanley Compensation Management Development and Succession Committee*

Dated:  May 24, 2024

33

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because this brief contains 7,695 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

 Dated:  May 24, 2024                    Respectfully submitted,


                                          */s/ Meaghan VerGow*
                                         MEAGHAN VERGOW
                                         O'MELVENY & MYERS LLP
                                         1625 Eye Street NW
                                         Washington, DC 20006
                                         (202) 383-5300

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On May 24, 2024**

deponent served the within: **Petition for a Writ of Mandamus**

**upon:**

**SEE ATTACHED SERVICE LIST**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on May 24, 2024**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

**Job# 330076**

## SERVICE LIST

Robert A. Izard (rizard@ikrlaw.com)
Douglas P. Needham (dneedham@ikrlaw.com)
IZARD, KINDALL & RAABE LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292

William H. Narwold (bnarwold@motleyrice.com)
Mathew P. Jasinski (mjasinski@motleyrice.com)
MOTLEY RICE LLC
27 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1681

John S. Edwards, Jr. (jedwards@ajamie.com)
Dona Szak (dszak@ajamie.com)
AJAMIE LLP
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 860-1600

Thomas R. Ajamie (tajamie@ajamie.com)
AJAMIE LLP
460 Park Avenue, 21st Floor
New York, NY 10022
(713) 860-1600

The Honorable Paul G. Gardephe
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007